IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANN E. BECKER,                         :        CIVIL ACTION NO. **1:CV-04-1003**
                                       :
    Plaintiff                       :         (Judge Caldwell)
                                       :
    v.                              :        (Magistrate Judge Blewitt)
                                       :
JOANNE B. BARNHART,                    :
Commissioner of                        :
Social Security,                       :
                                       :
    Defendant                       :

**REPORT AND RECOMMENDATION**

      This is a Social Security disability case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Plaintiff, Ann E. Becker, is seeking review of the decision of the Commissioner of Social Security

("Commissioner") which denied her claims for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security

Act (Act), 42 U.S.C. §§ 1381-1383(f).

**I. PROCEDURAL HISTORY.**

      The Plaintiff filed applications for DIB and SSI benefits on April 29, 2003, alleging an

inability to work since December 12, 2002, due to a knee injury and claiming that she was unable

to stand for a prolonged time. (R. 100).[1] Her claims were denied (R. 10, 32), and a timely request

for a hearing was filed.  A hearing was conducted before an Administrative Law Judge ("ALJ") on

---

[1]There is no dispute that the Plaintiff meets the nondisability requirements for DIB and is insured for disability benefits through the date of the ALJ's decision, March 29, 2004. (R. 11). The record reveals that Plaintiff had past work experience to provide insured status. (R. 75-95).  We also note that the Plaintiff's date of last insured is December 31, 2007. (R. 96).

December 2, 2003.  Plaintiff was denied benefits pursuant to the ALJ's decision of December 12, 2003. (R. 45-53).

The Plaintiff requested review of the ALJ's decision by the Appeals Council.  Said request for review was granted, and the ALJ's decision was vacated.  On February 24, 2004, the case was remanded to the ALJ.  On March 11, 2004, a supplemental hearing was held before the ALJ.  (R. 10). Plaintiff was again denied benefits pursuant to the ALJ's decision of March 29, 2004. (R. 10-17). The Plaintiff requested review of the ALJ's decision by the Appeals Council.  On April 27, 2004 (R. 3-5), the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's March 29, 2004, decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 15 & 16).

## II. STANDARD OF REVIEW.

When reviewing the denial of DIB and SSI benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The parties agree on the stated standard of review.  (Doc. 5, p. 4 & Doc. 6, pp. 1-2).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).[2]

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c),

---

[2]The Defendant  also states the evaluation process in her Brief.  Doc. 16, p. 10.

416.920(c).  The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work.  *See* 20 C.F.R. § 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 16).  In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date. (R. 15).  Further, the ALJ determined that the medical evidence establishes that Plaintiff has bilateral knee pain and is status-post arthroscopy of her left knee, and that they are impairments which are severe within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 15-16).

4

The ALJ noted that Plaintiff's testimony is not completely credible or consistent with the objective medical record, to the extent that she claims limitations imposed by her impairment. (R. 13, 16). When assessing her residual functional capacity ("RFC"), the ALJ found that Plaintiff retains the following residual functional capacity: to perform a full range of sedentary work without operation of foot controls. (R. 14, 16). The ALJ also found that the Plaintiff's severe impairments prevent her from performing her past relevant work. (R. 14, 16). Thus, the ALJ found that the Plaintiff met her burden in Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f), 416.920(f). The final and fifth step requires an analysis of whether the Plaintiff, based on her age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy. *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000). Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428. In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments. 20 C.F.R. § 404.1523; *Plummer, supra*. Based on the testimony of an impartial vocational expert, the Administrative Law Judge concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity, she is capable of performing work that exists in significant numbers in the national economy. (R. 14-15).

Specifically, the vocational expert testified that if the ALJ found that the Plaintiff were limited to sedentary work, she could not perform any of her past relevant work.  (R. 211).  The VE also testified that if Plaintiff were limited to sedentary work with the prohibition against using foot controls, it would not narrow the range of sedentary work which Plaintiff could perform.  Thus, Plaintiff was found to be not disabled.  (R. 15-17).

As Defendant notes (Doc. 16, p. 2, n. 1), the Social Security Administration Regulations only authorize payment of SSI disability benefits from the date an application is filed.  *See* 20 C.F.R. § 416.202 and § 416.501.  In this case, as stated, Plaintiff's SSI application was filed April 29, 2003. (R. 10).    The relevant time period for this case with respect to Plaintiff's DIB application is December 20, 2002 (alleged onset date),  through March 29, 2004 (date of ALJ's decision).[3]

## IV.  DISCUSSION.

This appeal involves the denial of Plaintiff's applications for DIB and SSI applications. Plaintiff filed her applications in April, 2003, which were denied in March, 2004, by the decision of an ALJ. The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.  (R. 17).

While the ALJ found that the Plaintiff had severe impairments, namely, bilateral knee pain and status-post arthroscopy of her left knee  (R.  12, 15, ¶ 3.), he determined that her impairments did not meet or medically equal a listed impairment.   The Plaintiff contends that the ALJ erred in

---

[3]In order to qualify for DIB, Plaintiff had to establish that she was disabled prior to her last date insured, which is not until December 31, 2007. (R. 96). The ALJ determined that Plaintiff was insured for disability benefits through the date of his decision and thus, she was eligible for DIB. (R. 11). *See* 20 C.F.R. 40.131(a); *Matullo v. Bowen,* 926 F. 2d 240, 244 (3d Cir. 1990).

finding that her testimony regarding the severity of her impairments and restrictions was not completely credible or consistent with the record.  (Doc. 15, pp. 9, 11).  The Plaintiff further contends that the ALJ failed to give proper weight to the opinions of her treating physician (Dr. Haas) and to the doctor's determination that she was disabled when there was no contrary objective medical evidence. (*Id.*, pp. 9-11).  The Plaintiff finally argues that the ALJ failed to fully develop the record, since he did not explore whether she suffered from loss of muscle tone, which would be consistent with her testimony that she spent the day in bed or on the couch.  (*Id.*, pp. 9, 12).

### A.  Background

The Plaintiff was born on February 9, 1966.  (R. 72).  She was 38 years old at the time of the hearing before the ALJ on March 11, 2004, and is currently age 39.  (R. 11).  Thus, Plaintiff is a younger person. *See* 20 C.F.R. § 404.1563(c).  (R. 16, ¶ 8.).  She has a 10th grade education (R. 11), and her past relevant work included assistant manager, grocery store clerk/cashier, fast food worker, waitress, and school bus driver.   (R. 11).   The Plaintiff alleges that she became disabled on December 20, 2002, because of a knee injury. (R. 11, 100).  The ALJ found that the Plaintiff's impairments, bilateral knee pain and status-post arthroscopy of her left knee (R. 138), were severe. (R. 15, ¶ 3.).  However, the ALJ also found that the Plaintiff retained the residual functional capacity to engage in a full range of sedentary work activity that involves no operation of foot controls. (R. 16, ¶'s  6., 11.).[4]  Finding that the Plaintiff's RFC did not preclude her from performing sedentary

---

[4]Sedentary work is defined as follows: (a) *Sedentary work.*  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

work, the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 16, ¶ 12.).

### B. Medical Evidence

On appeal, the Plaintiff contends that the ALJ did not give proper weight to the opinion of her treating physician (Dr. Haas (R. 155)), and to her testimony regarding her limitations and her inability to perform substantial gainful activity.  The Plaintiff also contends that the ALJ failed to fully develop the record and explore all relevant facts, especially since she was *pro se* at the March 11, 2004, hearing.  (Doc. 15, p. 9).

Dr. Haas  treated Plaintiff from January 7, 2003, through February, 2004.  (R. 136-163). The Plaintiff was hit by a car on December 22, 2002, and injured her left knee and right thumb.  (R. 140).  She presented to Dr. Haas on January 7, 2003.  An MRI was ordered which showed no tears in the menisci, but a tear in the posterior horn of the medial meniscus.  (R. 139).  Plaintiff also had possible chondromalacia.  Arthroscopic surgery was indicated for her left knee.  Plaintiff was later diagnosed with chondromalacia[5] of the patella (knee cap).  (R. 137).  A TENS and strengthening exercises were prescribed.  (R. 140).

---

20 C.F.R. §404.1567 (a).


[5]Chondromalacia is the softening of any cartilage.  341 *Stedman's Medical Dictionary*, 27th Ed.

An MRI was taken on January 23, 2003, which revealed degenerative changes of the left knee joint with a left knee joint effusion. However, there was no evidence of ligaments, tendinous and meniscal injury. (R. 143).

On March 5, 2003, the Plaintiff had the following surgery: arthroscopy, arthroscopic chondroplasty, and resection of medial patella plica of left knee. (R. 141). After surgery, Plaintiff was diagnosed with Grade III chondromalacia of the patella. Pathology results following the surgery showed:

> Gross pathology revealed: 1) Medial patella plica of the left knee. 2) Grade III chondromalacia of the patella. 3) The patella rode in the midline. 4) No tears of medial or lateral menisci and intact cruciate ligament.

(R. 141).

On March 17, 2003, Dr. Haas noted that Plaintiff had "good healing" and no infection. (R. 138). Strengthening exercises were planned. On April 14, 2003, Dr. Haas examined Plaintiff and found:

> PHYSICAL EXAMINATION: Range of motion is 0 to 120 degrees with no instability to varus or valgus stress. There is subpatellar crepitance. She did have Grade III and IV chondromalacia of the patella.

(R. 137). Physical therapy with strengthening exercises was initiated.

An RFC assessment by a state agency consultant was completed on June 13, 2003. (R. 33-40). This RFCA indicated that Plaintiff had the following exertional limitations:

1. Occasionally lift and/or carry (including upward pulling) 20 pounds;

2. Frequently lift and/or carry (including upward pulling) 10 pounds;

3. Stand and/or walk (with normal breaks) for a total of about 6 hours in

9

an 8-hour workday;

4.  Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday;

5.  Push and/or pull (including operation of hand/foot controls) unlimited, other than shown for lift and/or carry;

It was further noted that Plaintiff had the following postural limitations:

She could occasionally climb, balance, stoop, kneel, crouch, and crawl.

(R. 34-35).

On July 8, 2003, Dr. Haas treated Plaintiff for chondromalacia of her left knee.  The doctor's exam revealed:

> PHYSICAL EXAMINATION: Well nourished, well hydrated, white female.
> Ambulation: she ambulates with an antalgic gait.
> Musculoskeletal: Left knee: Range of motion is 0 to 120 degrees. Subpatellar crepitance is noted.  Negative drawer sign.
> Vascular: She has good popliteal pulse.

(R. 147).  The impression was chondromalacia.  The treatment plan was :

> I recommend she get Synvisc for this.  Her pain is basically an 8/10.  It inhibits her ability to work during the day, ability to ambulate and do activities of normal living.  She has failed at every other therapy we have tried.  We have tried arthroscopic surgery and physical therapy.  We will try injecting her with 80 mg of Depo-Medrol and 3 cc of 0.5% Marcaine today, but I do recommend that we do the Synvisc, if we can get approval.

(*Id*.).

In October, 2003, Plaintiff still had pain level of 8/10.  Dr. Haas' exam revealed:

> PHYSICAL EXAMINATION: Left knee range of motion is 0 to 120
> degrees. She has subpatellar crepitance.  She ambulates with an
> antalgic gait.  She is still having a lot of pain in the knee secondary
> to chondromalacia which is due to the motor vehicle accident
> of 12/20/02.

(R. 151).

In September, 2003, and November, 2003, Dr. Haas treated Plaintiff for her right knee. (R. 145, 152).  Plaintiff received two corticosteriod injections, but still had pain.  Plaintiff again went to Dr. Haas on January 19, 2004, for right knee pain.  (R. 157).  Plaintiff's pain level was reported as 10/10, and it was reported a preventing her from doing activities of daily living like bending, and kneeling.  Plaintiff's range of motion was 0 to 120, with no instability to varus or valgus stress. Subpatellar Crepitance was found.  (*Id*.).

On December 10, 2003, Dr. Haas completed a form for the Pennsylvania Department of Welfare in which he indicated that Plaintiff was permanently disabled because of her chondromalacia of her left and right knees.  (R. 155).

Plaintiff had her third Synvisc injection (left knee) on December 29, 2003. (R. 157). On February 4, 2004, Dr. Haas gave Plaintiff a Synvisc injection (right knee) and aspirated it.  (R. 156).   Plaintiff's pain level in her right knee was 9/10.   He indicated that Plaintiff had chondromalacia of her left and right knees.  (R. 156).  Dr. Haas then noted as follows:

> I believe Ann has permanent disability from the left knee.  She
> clearly will be unable to do any activities such as standing,
> walking, bending, squatting or do any kind of manual work.
> For the rest of her life, she will only be able to stand and sit to
> tolerance.  These changes are permanent.  In fact, she will
> eventually need knee replacement.

11

(R. 156).

The Plaintiff stated in her applications for DIB and SSI benefits that her disability began on December 20, 2002, when her symptoms due to her knee injury prevented her from standing for long periods of time.  (R. 100).  Plaintiff stated that she was unable to work because of too much pain.

As stated, Plaintiff's treating doctor for her knee (left and right) impairments was Dr. Haas.  (R. 102).  Plaintiff also indicated that she received knee surgery, and the record showed that she had physical therapy, steroid and Synvisc injections in both knees.  Plaintiff has received anti-inflammatory medication and had no side effects.  (R. 105).

Plaintiff testified at the ALJ hearing that she takes care of her two children (nine and eleven) on her own.  (R. 207).  Plaintiff stated that she cannot climb stairs; she can walk 30 feet; she does not use a cane or crutches, nor a wheel chair; she can sit for 10-15 minutes at a time; and she can stand 3-4 minutes at a time.  (R. 205-206).

Plaintiff receives prescription Vioxx  medication but stated that it does not help her.  (R. 206).  Plaintiff stated that she did not tell her doctor that Vioxx was not helping her.  (*Id.*).  Plaintiff had three (3) sets of shots in both her left knee and right knee, but they did not help.   (R. 207).  During the day, Plaintiff stays on the couch and does not stay in her bed, as she stated at her first hearing, since she cannot climb the stairs. (R. 208).  At the time of the March 11, 2004, ALJ hearing, Plaintiff had not had knee replacement surgery, but she stated that she will need it in the future.  Dr. Haas agreed. (R. 156).    The ALJ found that the Plaintiff's physical impairments are severe, but they did not meet or equal any listed impairment.  The ALJ also found that the Plaintiff's severe

12

impairments do not prevent her from performing sedentary work. The Plaintiff contends, in part, that this finding is not supported by substantial evidence. We agree with Defendant that this finding was supported by substantial evidence in light of the medical record as discussed above.

### D. Analysis

Plaintiff contends that the ALJ's finding that her testimony was not completely credible was erroneous and that he erroneously failed to fully consider the evidence from Plaintiff's treating physician, as well as the objective medical evidence. (Doc. 15, p. 9). Thus, Plaintiff, in part, requests that the decision of the Commissioner denying her DIB and SSI benefits be reversed (Doc. 15) because the ALJ failed to give appropriate weight to the opinions of her attending physician. *See Mason v. Shalala*, 994 F. 2d 1058, 1067 (3d Cir. 1993).

The ALJ found that Plaintiff did have severe impairments (bilateral knee pain) based on the requirements set forth at 20 C.F.R. §§ 404.1520 and 416.920. (R. 15, @ ¶ 3.). However, he also found that such impairments did not render the Plaintiff disabled. (*Id.*, ¶ 13.). The existence of a medical condition does not demonstrate a disability for purposes of the Act. Thus, the issue was not whether Plaintiff suffered from a medical condition, but whether that condition results in a functional disability that prevents Plaintiff from performing substantial gainful activity. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990). As discussed above, we find, contrary to Plaintiff's argument, that the medical evidence supported the ALJ's finding that the Plaintiff was not disabled.

### i. The ALJ's RFC Finding That Plaintiff Could Perform Sedentary Work

As discussed, the ALJ found that the Plaintiff had physical impairments which were severe, but that they were not severe enough to meet or equal any listed impairment. (R. 15-16). The ALJ

also found that the Plaintiff had the RFC to perform her sedentary work.  (R. 16).  Plaintiff alleges that the ALJ erred in finding that she could perform her sedentary work in light of her  knee disorders and that he failed to develop the record.   Plaintiff also argues that the ALJ erred by not giving full credibility to her testimony and by ignoring the medical evidence and opinion of her treating doctor, which indicated that she was disabled.

Upon review, we find that the ALJ stated the reasons in his decision with respect to his RFC finding, by discussing the medical evidence, both objective evidence and the reports of Plaintiff's treating doctor, and explaining his reasoning.  (R. 12-14).  It is clear that the Third Circuit requires the ALJ to identify the relevant listed impairments and to provide an explanation of reasoning for a finding that a claimant does not meet or equal a listed impairment.  *See Burnett*, 220 F. 3d at 120.  We find that the ALJ has fully explained his reasoning as to why the Plaintiff's physical impairments did not meet or equal any of the musculoskeletal listings, specifically listing 1.02 (dysfunctions of a joint).  (R. 12).  The ALJ found that the Plaintiff did not meet the requirement of 1.02A, in that there was no evidence that she could not ambulate effectively as defined by § 1.00B. 2. b.  As mentioned, Plaintiff herself testified that she can walk without the use of a cane or crutches, that she does not need a wheel chair, and that she can walk 30 feet.  (R. 205).

The ALJ also discussed the Plaintiff's RFC as a result of her physical impairments, as required by 20 C.F.R. § 404.1520.  (R. 12-14).  The Plaintiff's degree of functional abilities as a result of her physical impairments was also discussed by the ALJ.  (*Id*.).

The Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Haas and his findings and in failing to fully develop the record.   (Doc. 15, p. 10).  She states that, based on her

14

testimony and the reports of her doctor, which reports were the only medical evidence in the record, the ALJ's findings are based only on his speculation and lay opinions. (*Id.*, p. 11). The treatment notes and findings of Dr. Haas, as well as his opinion that Plaintiff was permanently disabled, have been discussed above. The Plaintiff claims that, based on these records, including Dr. Haas' stated findings regarding her knee pain and how it inhibits her ability to ambulate and perform daily activities (R. 147), she cannot engage in substantial gainful activity for at least 12 months. The Defendant argues (Doc. 16, pp. 11-12) that the ALJ's RFC finding was proper based on his own assessment of the record, despite the opinion of her doctor that she was unable work. The Defendant also argues that Dr. Haas did not assess whether Plaintiff had the RFC to perform sedentary work and that his findings related only to whether Plaintiff could perform the requirements of light work. As stated, Dr. Haas opined that Plaintiff was unable to stand, walk, bend squat or "do any kind of manual work." (R. 156)

The Defendant states that the ALJ recognized Dr. Haas' findings and that the ALJ's RFC finding limiting Plaintiff to sedentary work "because she cannot walk, stand or operate controls as required in the performance of light work" was consistent with Dr. Haas' findings. (R. 14). Thus, the Defendant argues that the reports of Plaintiff's own doctor do not show that she was precluded from engaging in sedentary work.

The Court in *Burnett*, 220 F. 3d at 121, stated that the ALJ must consider all evidence before his in making a RFC determination. The *Burnett* Court further stated that, while the ALJ is permitted to weigh the credibility of the evidence, he is required to give some indication of the evidence which he rejects, as well as the reasons for discounting the evidence. *Id*. Thus, the ALJ

must mention and refute some of the contradictory medical evidence before him. *Id.   See also Adorn v. Shalala*, 40 F. 3d 43, 48 (3d Cir. 1994).   We find that, in this case, the ALJ considered all of the medical evidence before him, and he mentioned and refuted some of the contradictory evidence, such as Dr. Haas' notes and opinion that Plaintiff was disabled.  (R. 12-14).   While the ALJ did not give controlling weight to Dr. Haas' opinion that Plaintiff was disabled, he did  gave  weight to the findings of Dr. Haas that the Plaintiff cannot perform manual work which would require her to stand and walk for long periods of time.  (R. 14).   The ALJ considered  Dr. Haas' findings that the Plaintiff had  decreased  range  of  motion  in  both  of  her  knees  and  that  she  had  pain  when  she  tried  to ambulate.  (R. 13).   The ALJ also considered the fact that Dr. Haas, as stated, recommended an exercise program for the Plaintiff.

The objective medical record in this case, as discussed above, reveals that the Plaintiff has chondromalacia of both of her knees.  (R. 156).   The ALJ also considered the Plaintiff's daily activities in making his RFC determination.  (R. 13).   The ALJ considered a RFC Assessment performed on Plaintiff, which found that she could engage in light work.  (R. 14).   This assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, that she could stand or walk about 6 hours and sit about 6 hours in an 8-hour work day.  (R. 34).   The ALJ's RFC finding, as Defendant points out, was more restrictive than this RFC Assessment, since he found that Plaintiff could only perform sedentary work as opposed to light work.  We also agree with the Defendant that the ALJ considered the Plaintiff's testimony that she could walk 30 feet and that she did not need a cane, wheelchair, or crutches.  In fact, the ALJ limited Plaintiff to jobs that did not require her to walk or stand for long periods.  (R. 14).

Based on the stated evidence, the ALJ also properly found that the Plaintiff's physical impairments did not meet listing 1.02.  In light of the *Burnett* case, we find that the ALJ made proper discussion of the evidence regarding listing 1.02 and an explanation of reasoning that the Plaintiff's physical impairments, which were found to be severe, did not meet or equal listing 1.02.

While there is medical evidence which indicated that Plaintiff had some of the "A" criteria of listing 1.02, such as Dr. Haas' finding that Plaintiff had an inhibited ability to ambulate (R. 147), there is substantial evidence to support the ALJ's decision that the Plaintiff's condition did not meet or equal listing 1.02.  We also find that substantial evidence supports the ALJ's determination that Plaintiff's severe physical impairments did not meet Listings 1.00, *et seq.* The Plaintiff has the burden of proving that she meets each of the requirements of a Listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  As discussed by the ALJ, the exams of Plaintiff's treating physicians did not indicate that the Plaintiff met or equaled any of the musculoskeletal listings.  Nor is there any other evidence in the record which demonstrates that Plaintiff met Listing 1.02, *et seq.*[6]

The ALJ properly discussed the objective medical findings as they related to listing 1.02.  As such, there is substantial evidence to support the ALJ's finding that the Plaintiff's physical impairments were severe, that they did not meet or equal listing 1.02, and that she had the RFC to perform  sedentary work.

---

[6] The ALJ referred to Plaintiff's objective medical  exams (R. 12-13) and described the findings which were made therein and, in particular, addressed the findings relevant to listing 1.02  criteria with respect to Plaintiff's knee condition.

### ii. *Plaintiff's Credibility*

In this case, the ALJ considered the Plaintiff's testimony concerning the severity of her knee condition, her symptoms, and the extent of her limitations, and he found that her testimony was not completely credible. (R. 13, 16). The Plaintiff claims that this finding was erroneous. The Plaintiff states that the ALJ improperly determined her credibility with respect to her testimony and the pain she experiences, since he determined that there was no medical evidence that she had loss of muscle tone consistent with Plaintiff's claim that she spent the day in bed (R. 185, first hearing) and that she spent the day of the couch (R. 208, second hearing). (R. 13). The Plaintiff argues that the ALJ based his credibility determination on speculation and his lay opinion, and that he should have further developed the record, especially since she was *pro se,* with respect to whether she suffered from loss of muscle tone. (Doc. 15, pp. 11-12).

The Defendant argues that the ALJ's credibility finding was based on legally sufficient reasons, namely that she was able to care for her two children and is able to care fo her own basic needs; that Dr. Haas recommended strengthening exercises for her; that there was no medical evidence showing she had loss of muscle tone or other problems of someone who spend the entire day in bed (or on the couch); and that she did not tell her doctor that Vioxx does not really help her. (Doc. 16, p. 16). The ALJ also found that there was no medical indication for the extremely limited life style which Plaintiff testified she lived. (R. 13). In fact, as mentioned, Dr. Haas recommended exercise for the Plaintiff. (R. 137). The Plaintiff argues that the ALJ's conclusion is not supported by the evidence and her testimony. The Defendant contends that the ALJ relied upon all of Plaintiff's symptoms, as well as the medical evidence and the other evidence in the record, as the basis for his

credibility determination.  We agree with the Defendant that substantial evidence supports the ALJ's credibility determination.

An ALJ must give weight to a claimant's subjective testimony of her inability to perform even light or sedentary work, but only when the claimant's testimony is supported by competent medical evidence.  *Schaudeck v. Commissioner of Social Security*, 181 F. 3d 429, 433 (3d Cir. 1999). The ALJ found that the medical evidence presented supports a conclusion that Plaintiff has bilateral knee pain, but that the severity of her knee conditions are not of the extent alleged by the Plaintiff. (R. 13).  The ALJ found that the medical evidence, including the reports of Plaintiff's treating doctor, the objective medical tests, and Plaintiff's testimony, reveals that the Plaintiff had impairments and pain, but he found that she could still perform sedentary work.  (R. 14).  The ALJ limited Plaintiff's work ability in that he found she could not operate foot controls.  (*Id*.).  This finding was consistent with Plaintiff's testimony that she could not drive due to knee pain and an inability to operate the foot pedals.  (R. 191).   Hence, the ALJ found that Plaintiff did have pain related to her knee condition (as Defendant concedes, Doc. 16, p. 17), but not to the extent that all types of work are precluded.  Thus, the ALJ found that the Plaintiff was not fully credible regarding the severity of the symptoms she claimed.  (R. 13 ).  The record, as detailed above, substantiates this finding.

The Plaintiff also states that the ALJ's credibility finding about her was not supported by the opinion of her treating doctor (Dr. Haas) that her pain level was 10/10 and that she would need knee replacement in the future, and thus was not supported by substantial evidence.   Defendant states that the ALJ correctly considered all of the evidence in making his credibility finding.  We

concur with the Defendant that Dr. Haas' aforementioned physical exam findings did not indicate that the Plaintiff could not perform sedentary work.  In fact, as stated, this doctor recommended Plaintiff undertake a strengthening exercise program to help her condition.  (R. 137).  Plaintiff admitted that she attended physical therapy (R. 123) and that she cared for her two children, as well as herself.

The ALJ found that the Plaintiff was not entirely credible.  (R. 13).  The ALJ accurately discussed the Plaintiff's testimony and her daily activities stated in her testimony.  In her testimony, Plaintiff stated that she did not need a cane, crutches or a wheelchair to ambulate.  (R. 205).  The ALJ found that the record as a whole, including the Plaintiff's daily activities, did not fully support Plaintiff's testimony regarding the extent of her disability.  The ALJ also considered all of the treatments which Plaintiff received and the medications and their effects on Plaintiff.

The Plaintiff's ability to lift within the requirements of sedentary work was substantiated by the RFCA's findings. (R. 34).  In her Daily Activities Questionnaire ("DAQ"), Plaintiff indicated that she could care for her children and pets, cook meals and clean up for them, dress herself (but needs help with pants), shower, drive 2 blocks, shop, and can climb a flight of stairs twice a day.  She indicated that she can walk without assistance of a cane, crutch, walker and brace. (R. 117- 119, 123).  The Plaintiff's daily activities can provide evidence of her symptoms and their effects on her ability to work.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ properly considered the Plaintiff's activities of daily living.

Plaintiff also argues that, in his credibility determination, the ALJ failed to develop his finding that there was no evidence that Plaintiff lacked muscle tone consistent with her testimony

Case 1:04-cv-01003-WWC   Document 17   Filed 05/03/05   Page 21 of 27

that she spent the day in bed and on the couch.  However, we find, as discussed above, that the ALJ relied upon the record as a whole.  The ALJ clearly articulated his reasoning for finding that the Plaintiff's subjective complaints of pain were not fully credible, and this determination is supported by substantial evidence.  Also, as Defendant points out (Doc. 16, p. 19), while the Plaintiff was *pro se* at her second ALJ hearing, the Plaintiff had counsel at her first ALJ hearing and submitted additional evidence at her second hearing.  (R. 202).

As discussed above, we have also found that the ALJ properly determined the Plaintiff's RFC. In this case, the ALJ determined that, despite her severe  knee impairments, the Plaintiff did have the RFC to perform sedentary work.  The ALJ, in recognition of Plaintiff's testimony, found that the Plaintiff should be limited in that she could not perform a job with foot controls.   (R. 14).

### iii.  Plaintiff's Treating Physician

The Plaintiff maintains that the ALJ failed to fully consider the medical evidence from her treating physician, Dr. Haas, as well as his opinion that she was permanently disabled.   As mentioned, the Plaintiff's doctor opined that she was totally disabled.  (R. 155).  The ALJ recognized this opinion of Plaintiff's doctor.  (R. 13).  The ALJ found that this opinion was not entitled to controlling weight.  However, he did concur with the opinion of Dr. Haas that Plaintiff could not perform manual work which would require her to stand and walk for long periods of time.  (R. 14). The ALJ also considered all of the medical evidence and found that Plaintiff could perform sedentary work because she could not walk, stand or operate controls as required by light work.  (*Id*.).

As the Defendant asserts (Doc. 16, pp. 13-14), the ALJ did in fact discuss Dr. Haas' finding of disability, but he (the ALJ) must decide the issue of disability under the Act.[7]  Thus, the ALJ properly did not give this opinion controlling weight since he found it inconsistent with the evidence of record.  (R. 14).

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of  *Morales v. Apfel*, 225 F.3d 310  (3rd Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)]  (*quoting  Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987));  *see also  Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994);  *Jones,* 954 F.2d at 128;  *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989);  *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988); *Brewster,* 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing  Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See  Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);  *Kent*, 710 F.2d at 115.

*Id*. at 317-318.

---

[7]As Defendant points out (Doc. 16, p. 14), it is the ALJ's determination, and not Dr. Haas', as to whether the Plaintiff is disabled.  *Adorno. v. Shalala,* 40 F. 3d 43 (3d Cir. 1994).

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. §416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §416.927(d)(2)(I). Additionally, the nature and extent of the treatment relationship is considered. The Regulations state: "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §416.927(d)(2)(ii).

We construe the Plaintiff as arguing that the ALJ erred in assessing the weight afforded to her treating physician's opinion and determination that she was totally disabled.  The ALJ did assess the opinion of Plaintiff's treating doctor, as discussed.  (R. 12-14).  The ALJ discussed the opinion of Plaintiff's doctor, and we agree with his conclusion that a finding of disability was not supported by her medical records, and by the record as a whole, including the stated objective medical tests.

As discussed, Dr. Haas indicated in February, 2004, that Plaintiff was permanently disabled.  (R. 156).  Dr. Haas also found that Plaintiff could not  stand, walk, bend, squat or do any kind of manual work.   (R. 156).  The Plaintiff, as stated, testified about her difficulties with standing, sitting and bending.  The ALJ considered these findings and in fact included them in his RFC finding to the extent that he found Plaintiff could not perform light work.   (R. 14).  The ALJ also found that the Plaintiff could not operate foot controls, walk and stand as would be required by light work.  (*Id*.).  These findings were consistent with the sedentary level of work which the ALJ found Plaintiff could perform.

The ALJ considered Dr. Haas' disability opinion and found that it was  not consistent with the medical records, as discussed above.  Further, as noted, it is the ALJ's determination as to whether the Plaintiff is disabled, and not Dr. Haas'.  *Adorno, supra*.

Plaintiff argues that the ALJ erred by failing to fully consider the reports and opinions of  her treating doctor.  The record indicates that the ALJ did thoroughly consider the reports and opinion of Plaintiff's doctor, as well as the diagnostics tests.

24

**V.  Recommendation.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the ALJ's decision be denied.

 

 

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 3, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANN E. BECKER, | : | CIVIL ACTION NO. **1:CV-04-1003** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 3, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *Defendant novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 3, 2005**

27